DOUGHTY (UNITED STATES v.). See Cases Nos. 14,986 and 14,987.

---

## Case No. 4,028.

### DOUGHTY v. WEST et al.

[6 Blatchf. 429; 3 Fish. Pat. Cas. 580.][1]

Circuit Court, S. D. New York. June 4, 1869.

PATENTS—INFRINGEMENT SUITS — DEFENSES—REISSUES.

1. James Draper was the original and first inventor of the improvement claimed in letters patent, reissued to Samuel H. Doughty, August 1st, 1865, for an "improvement in skeleton skirts," the original patent having been granted to Doughty and Draper, on the invention of Draper, October 4th, 1859, and reissued to Doughty, and Draper, and James Brown, and William King, December 27th, 1859. Draper made such invention before he applied for the original patent.

2. In a suit for the infringement of a patent, the defence cannot be taken, that the patent was issued unintentionally through a blunder of a subordinate in the patent office.

3. It is an infringement of the said reissued patent of 1865, to make and sell skeleton skirts, with the threads of filling left out in one or both of the two portions of tape which form the loop.

4. Skeleton skirts made in accordance with letters patent granted to Charles H. DeForest,

January 6th, 1863, for an "improvement in hooped skirts," are an infringement on the said reissued patent of 1865.

[5. Cited in Sarven v. Hall, Case No. 12,370, to the point that devices not described or specified may, if they are the invention of the patentee, be the subject of a patent, subject to all other rules governing the inventor's right; but it is not the office of a reissue to embrace them.]

[6. Cited in Fassett v. Ewart Manuf'g Co., 58 Fed. 364, to the point that the action of the patent office in allowing a separation of claims for the purpose of filing divisional applications is conclusive, and not reviewable in the courts.]

[This was a bill in equity, filed to restrain the defendants from infringing letters patent for "an improvement in skeleton skirts," granted to Samuel H. Doughty and James Draper, as assignees of James Draper, October 4, 1859, assigned to Doughty, Draper, James Brown and William King, and reissued to them December 27, 1859, assigned to plaintiff, and reissued to him August 1, 1865. A trial under the first reissue of this patent will be found to be reported Doughty v. West [Case No. 4,029].

[The claim of the last reissue was: "The new manufacture of skeleton skirts, substantially as described, consisting of a series of tapes woven in the direction of their length in alternate sections, as single and double tapes, with the hoops inserted in the loops formed by weaving the tapes as double tapes, and there secured to prevent the tapes from sliding laterally on the hoops."

[The defendant claimed under letters patent for "an improvement in hooped skirts," granted to Charles H. DeForest, January 6, 1863, the claim whereof was as follows: "The employment of the clasp C, or its equivalent, in combination with the hoops and pockets A of the hoop-supporting tapes, for preventing the displacement or derangement of the hoops in the pockets, substantially as hereinbefore described."][2]

S. D. Law, C. M. Keller, and George Gifford, for complainant.

John B. Staples, for defendants.

BLATCHFORD, District Judge. The bill in this case is founded on reissued letters patent, granted to the plaintiff on the 1st of August, 1865, for 14 years from the 4th of October, 1859, for an "improvement in skeleton skirts." The patent was originally issued, October 4th, 1859, to the plaintiff and James Draper, as assignees of said Draper, as inventor. On the 27th of December, 1859, it was reissued to the plaintiff, and said Draper, and James Brown and William King, the then owners of it. Subsequently, and before the granting of the reissue of 1865, the entire interest in the patent, and in the reissue of 1859, was assigned to the plaintiff. He brought a suit in equity on the reissue of 1859, in this court, against two of the defendants who are defendants in this suit.

---

[1] [Reported by Hon. Samuel Blatchford, District Judge, and Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 6 Blatchf. 429, and the statement is from 3 Fish. Pat. Cas. 580.]

[2] [From 3 Fish. Pat. Cas. 580.]

That suit was brought to a final hearing before Mr. Justice Nelson and Judge Shipman. It appears, from the opinion of the court in that case, Doughty v. West [Case No. 4,029], delivered by Judge Shipman, and concurred in by Mr. Justice Nelson, that the plaintiff contended that the reissue of 1859 covered all skeleton skirts, with the perpendicular tapes woven singly between the hoops, and woven double, or with pockets, for the reception of the hoops. The court held, however, that the claim of the reissue of 1859, as drawn, was limited to a skeleton skirt in which the hoops were fastened in the loops or pockets by some kind of material put on in a soft state, and adhering by sticking, and which subsequently became hard, such material being put into the pocket, or upon the hoop within the pocket, so as, when hardened, to keep the hoop rigidly in place. In other words, the court regarded the reissue of 1859 as covering only the mode of fastening the hoops in the loops in the perpendicular tapes by such adhesive material. The court then added: "If the invention is broad enough to include all skeleton skirts with the perpendicular tapes woven singly between the hoops, and woven double, or with pockets, for the reception of the hoops, then his patent should be reissued to cover that invention; and there is no possible difficulty about doing it. If there is something in the state of the art which will show that he is not the inventor to that extent, then he can obtain no such reissue. If he is the inventor of a skeleton skirt of that character, with the perpendicular tapes woven singly between the hoops, and woven double, or with pockets, for the reception of the hoops, which hoops are inserted either while in process of being woven, or after they are woven, and then fastened in any manner, there certainly can be no possible difficulty in describing, and it is the duty of the patentee to accurately describe it." Again, the court says: "If the patentee invented and was the first to make a skeleton skirt, woven singly between the hoops, and double at the place of insertion of the hoops, fastened at the pockets—and that is the simple description of the invention claimed—then he was entitled to it." Again: "It not very unfrequently happens, that patentees, by mistake, limit the invention described, and make it narrower than the invention made. If that is the case, and it can be seen, on the reissue of the patent, that the invention extends beyond the construction the court gives it, it can be made the subject of trial hereafter. If the patentee has made the invention thus broadly claimed, it will hereafter present a simple issue for trial, as the patent can be made to cover it without difficulty." This decision was rendered in June, 1865, and the present reissue was granted on the 1st of August, 1865.

The specification of this reissue limits the invention to an improvement in skeleton skirts, that is, as it defines them, skirts consisting of a series of tapes extending from the waist down, and a series of horizontal and parallel hoops secured to the side of the tapes, by stitching, by tying, or by rivet-clasps. The object of the invention is stated to be to remedy the defect which arose from the fact that the fastening by which the hoops were secured to the side of the tapes was liable to break, and permit the hoops to fall and drag on the ground, being a source of inconvenience and often of serious accidents. The remedy is effected, says the specification, "by making the skirt of a series of tapes woven along their length, alternately, as single and as double tapes, to form loops or openings, at the required distances apart, for the reception of the hoops, which are no longer dependent upon the means of fastening to the side of the tapes, and cannot fall, even if not fastened." It also says: "A skeleton skirt, when thus fabricated, needs no fastening of the hoops to the tapes to hold them up, and the only fastening required is to prevent the tapes from sliding laterally on the hoops, so that, if such fastening should give way, the hoops will still be held up by the tapes." The specification then states, that the inventor has found glue to be a suitable means for securing the hoops in the loops of the tapes, to prevent the tapes from sliding laterally on the hoops, as the weight of the hoops has no tendency to rupture the fastening, as in skeleton skirts known prior to his invention; and that the hoops may be inserted in the act of weaving the tapes, or the tapes may be woven with the loops, and the hoops be inserted afterwards. The specification then describes the manner in which the tapes can be woven as single tapes for the required distance between two hoops, and then be woven double for a little more than the width of a hoop, and then a hoop be inserted between the two series of tapes, and then the weaving of the tapes as single be resumed, and the hoop be thus inclosed in the loops so formed. It further states, that the loops may be formed by the weaving of the tapes in the same manner, and the hoops may be inserted afterward. The claim is as follows: "The new manufacture of skeleton skirt, substantially such as described, consisting of a series of tapes woven, in the direction of their length, in alternate sections, as single and double tapes, with the hoops inserted in the loops formed by weaving the tapes as double tapes, and there secured, to prevent the tapes from sliding laterally on the hoops."

The bill charges, as an infringement of the patent, the making and selling of skeleton skirts by the defendants. One of the principal defences set up to the bill is, that Draper was not the original and first inventor of what is covered by the last reissue, and much testimony has been introduced by the defendants for the purpose of

establishing the existence, before the time of the invention of Draper, of skeleton skirts similarly constructed. The main questions discussed on the hearing were, whether Draper was an original, and, if so, the first inventor of the improvement claimed in the last reissue, and whether he made such invention before the time when he applied for his original patent. On these points the plaintiff has clearly made out his case, to my entire satisfaction. Without discussing the evidence at length, it is sufficient to say, that it establishes that Draper made the invention of a skirt such as is claimed in the present reissue, as early as June, 1856; that neither the Morrow skirt nor the Hartley skirt anticipates the invention; that neither the Hough skirt, nor the skirt defendants' Exhibit No. 17, was a skeleton skirt, within the meaning of the patent; that the Clark skirt was not prior to the Draper skirt; that the France skirt was subsequent to Draper's; that the Cornet, the Schmidt, and the Schlumpf skirts were not prior to Draper's; and that no other alleged prior skirt, in regard to which evidence was adduced, is an answer to the patent. In fact, the evidence shows that all the skeleton skirts that have been constructed like the one described and claimed in the present reissue of the Draper patent, are traceable back to the skirts which Draper made in connection with Brown, and put into the market in pursuance of his invention. Such skirts, when Draper and Brown first made them, and put them into the market, were constructed precisely according to the description contained in the specification of the present reissue, and like the first skirt made by Draper in June, 1856, and such they have continued to be ever since.

The present reissue is not attacked or impeached for fraud. It must, therefore, stand as a valid reissue, properly granted. The point taken, that it was issued unintentionally, through a blunder of a subordinate in the patent office, is one which cannot be availed of in a suit brought on the patent. For any such alleged invalidity, the only remedy would be a direct proceeding by the United States to vacate the patent. The seal of the United States, and the signatures of the proper officers to the grant must be respected, in the absence of fraud, so long as the United States themselves do not question the grant. This is familiar law in regard to all grants by a sovereign.

The only defence set up on the point of infringement is, that, in some, at least, of the skirts made by the defendants, threads of filling have been left out in one or both of the two portions of tape which form the loop. But this is no defence. The tape is none the less a double tape, within the meaning of the specification, because the loop or pocket is formed wholly of warp threads; and the loop is none the less a loop formed by weaving the tape first as a single tape, and then as a double tape, and then as a single tape, because the portions which form the loop are composed wholly of warp threads. Any such arrangement is, at best, an improvement embodying the original invention of Draper, which cannot be used without violating his patent.

The defendants set up, in their answer, that all the skirts which they have made with double-woven tape, since the present reissue to the plaintiff was granted, have been made under a patent granted to one Charles H. DeForest, January 6th, 1863, for an "improvement in hooped skirts." The specification of that patent declares the invention of DeForest to be an "improved method of fastening the hoops to the tapes in hoop skirts." It also says: "My invention relates to that kind of hoop skirts in which the tapes, or vertical strips, are woven, or formed, with pockets or loops, through which the hoops pass, and which sustain or support the hoops, and my invention has for its object a simple, durable, and effective means of retaining or holding the hoops in the pockets, in their proper position, or, in other words, to prevent the tapes from sliding on the hoops, and, to this end, my invention consists in the employment, in combination with the hoops and pocket tapes, of a metallic retaining clasp, so arranged as to prevent the hoop from sliding through or in the pocket." The claim of the patent is to the employment of the clasp in combination with the hoops and pockets. There is nothing in this patent, properly construed, which can give a right to use, under it, the hoops and pockets, if they are covered by a valid prior patent. The plaintiff's patent is a valid prior patent for the hoops and pockets, as an element of DeForest's combination. If DeForest's patent is a valid patent for such combination, the plaintiff cannot use such combination, without obtaining a right to do so under the DeForest patent. Nor can DeForest, or those holding under him, use the invention of Draper, as an element in DeForest's combination, without obtaining a right to do so under the plaintiff's present reissue.

There must be a decree for the plaintiff for a perpetual injunction, and an account, with a reference to a master, and for the costs of the suit.

[NOTE. This case was afterwards heard on a motion to retax the costs. See Case No. 4,030. On the relation of the defendants it was sought to have the reissue here sued upon vacated on the ground that it was granted by inadvertence and mistake, but the bill was dismissed. See United States v. Doughty, Case No. 14,986.]